UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAYDEN S., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case # 1:20-CV-759-DB |
| | § |
| COMMISSIONER OF SOCIAL SECURITY, | § MEMORANDUM DECISION |
| | § AND ORDER |
| Defendant. | § |

# INTRODUCTION

Plaintiff Hayden S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **GRANTED.**

# BACKGROUND

On January 19, 2017, Plaintiff protectively filed her SSI application, alleging disability beginning January 19, 2016 (the disability onset date) due to insomnia, social phobia with anxiety, and gender dysphoria. Transcript ("Tr.") 179-91, 202. Plaintiff's claim was denied initially on April 5, 2017, after which she requested an administrative hearing Tr. 17. On February 14, 2019, Administrative Law Judge Mary Mattimore (the "ALJ") conducted a hearing in Buffalo, New

York. Tr. 17. Plaintiff appeared and testified at the hearing and was represented by Zachary Zabawa, an attorney. *Id*. Joey Kilpatrick, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on April 3, 2019, finding that Plaintiff was not disabled. Tr. 17-30. On April 20, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's April 3, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 3, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since January 19, 2017, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: social phobia; social anxiety disorder; panic disorder; bipolar disorder; gender dysphoria/gender identity disorder; and adjustment disorder with anxiety (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant can perform low stress jobs, defined as simple routine work, make simple workplace decisions, not at a production rate (assembly line) pace. She can maintain attention and concentration for two-hour blocks of time. She can tolerate minimal changes in workplace processes and settings. She can tolerate occasional interaction with supervisors but only incidental contact with coworkers and the public. She cannot perform tandem or team work;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on August 17, 1992 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 19, 2917, the date the application was filed (20 CFR 416.920(g)).

Tr. 17-30.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on January 19, 2917, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 30.

## **ANALYSIS**

Plaintiff's sole argument is that the ALJ's RFC finding is deficient because the ALJ did not properly consider the opinion of Plaintiff's treating psychiatrist, Adam K. Ashton, M.D. ("Dr. Ashton"), to which the ALJ gave limited weight. *See* ECF No. 10-1 at 12-20. Plaintiff argues that the RFC finding lacks substantial evidence because the ALJ did not give significant weight to Dr. Ashton's opinion. *See id*.

The Commissioner argues in response that the ALJ correctly analyzed Dr. Ashton's opinion in accordance with the applicable regulations and appropriately accorded the opinion little weight. *See* ECF No. 11-1 at 9-13. Further, argues the Commissioner, the ALJ's RFC ultimately accounted for many of the limitations in Dr. Ashton's opinion and appropriately limited Plaintiff to simple, routine, unskilled work. *See id*. at 9.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that, the ALJ properly considered the entire record, including treatment notes showing normal mental status exams and Plaintiff's own testimony that she could work in a job that was autonomous with only occasional interaction with a supervisor. Accordingly, the ALJ's determination that Plaintiff retained the RFC for a range of light, unskilled work was supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC

assessment did not perfectly match a medical opinion is not grounds for remand.). Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted). Moreover, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). An ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588.

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

As noted above, Plaintiff challenges the ALJ's consideration of the treating source opinion of Dr. Ashton. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of

7

other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Plaintiff alleges that the ALJ did not sufficiently consider the length, consistency, and frequency of Plaintiff's treatment with Dr. Ashton, or Dr. Ashton's specialty. *See* ECF No. 10-1 at 12-15. However, Plaintiff acknowledged that the ALJ "correctly noted Dr. Ashton was a 'longtime treating source.'" *See id*. at 13 (citing Tr. 27). Plaintiff also acknowledged that "the ALJ provided several reasons for not assigning controlling weight to the opinion, including the ALJ's finding that Dr. Ashton's opinion was not supported by treatment records and the opinion's inconsistency with Dr. Ashton's own examination, as well as with Plaintiff's work status and testimony. *See id*. at 16 (citing Tr. 27-28). Despite these acknowledgements, Plaintiff argues that the ALJ's discussion of the treating physician factors was inadequate. *See id*. at 13-15. For the reasons discussed below, Plaintiff's argument lacks merit.

8

First, Plaintiff's argument appears to be based on the erroneous presumption that RFCs are medical determinations and, thus, outside of the ALJ's expertise. As explained above, however, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding[] that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Nothing in the Act, the regulations, or any Agency rulings indicates that the ALJ must rely on a medical source opinion in assessing RFC. *See* 20 C.F.R. §§ 404.1512 (b)(6), 416.912(b)(6); 20 C.F.R. §§ 404.1512(d),(d)(1), 416.912(d)(d)(1) (While the Agency will seek an RFC-relevant medical source opinion from any acceptable medical sources who have examined or treated her, "the lack of the medical source statement will not make the report incomplete.").

Contrary to Plaintiff's argument, the ALJ here properly considered the factors in 20 C.F.R. § 416.927 and provided good reasons for according Dr. Ashton's January 2019 opinion little weight. Tr. 27-28, 677-79. As noted above, an ALJ need not expressly enumerate each factor considered. *Marquez v. Colvin*, 2013 WL 5568718, at *9. Moreover, even if the ALJ failed to explicitly consider each factor, the Commissioner's decision will be affirmed if a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d at 129 (other citations omitted); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ adequately considered the regulatory factors in this case.

The ALJ explained that she afforded Dr. Ashton's opinion limited weight because it was not supported by his own treatment records. Tr. 27. For example, the ALJ noted that Dr. Ashton's opinion that Plaintiff is unable to meet competitive standards regarding performing at a consistent pace, interruptions from psychologically-based symptoms, exhibiting behavioral extremes, and

9

distractions is not supported by repeated mental status examinations showing Plaintiff to have normal attention span and concentration, cooperative and normal affect, calm motor activity, and intact judgment and insight with no signs of acute distress. Tr. 421-47, 618-62. The ALJ also discussed treatment notes from Dr. Ashton and other sources, noting normal mental status findings, including intact memory, concentration, attention span, and thought process. Tr. 22-25. An ALJ may properly discount the opinion of a treating physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Domm v. Colvin*, 579 F.App'x 27, 28 (2d Cir. Sept. 23, 2014) (summary order); *Micheli v. Astrue*, 501 F.App'x 26, 28-29 (2d Cir. Oct. 25, 2012) (summary order); *see also Burguess v. Berryhill*, No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment).

In any event, the RFC ultimately accounted for many of the purported limitations in Dr. Ashton's opinion. For example, Dr. Ashton opined that Plaintiff had no limitations in her ability to remember work-like procedures, understand and carry out very short and simple instructions, or in her ability to ask simple questions or request assistance. Tr. 679. Correspondingly, the RFC appropriately limited Plaintiff to simple, routine, unskilled work. Tr. 22. Dr. Ashton opined that Plaintiff was "limited but satisfactory" in her ability to maintain attention for two-hour segments, maintain regular attendance, make simple work-related decisions, and respond appropriately to changes in a routine work setting. Tr. 679. Thus, in addition to limiting Plaintiff to simple routine work, the RFC, limited Plaintiff to jobs that had minimal changes in the workplace processes and settings and noted Plaintiff's ability to maintain attention and concentration for two-hour blocks of time. Tr. 22.

The ALJ also considered Dr. Ashton's opinion in comparison to the other medical opinions in the record, in particular, the opinions of consultative psychiatric examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"), and state agency psychological consultant A. Dipeolu ("Dr. Dipeolu"). Tr. 26-28, 102-04, 517-21. The ALJ gave partial weight Dr. Fabiano's March 2017 opinion, noting that Dr. Fabiano is an examining source, and the portion of his opinion regarding a range of limitations from none to moderate in mental work-related functions were supported by, and consistent with, his own examination findings. Tr. 27. For example, the ALJ noted that Dr. Fabiano's opinion that Plaintiff has moderate limitations in interacting with others, controlling her behavior, and regulating emotions was supported by his examination finding of anxious mood, restless motor behavior, and demonstrated impairment in memory due to nervousness. Tr. 27, 519-20.

The ALJ also noted that Dr. Fabiano's opinion that Plaintiff has no-to-mild limitations in her ability to understand, remember, or apply instructions was supported by Plaintiff's ability to perform calculations and serial 3's, as well as her average intellectual functioning. *Id.* The ALJ further noted that this portion of Dr. Fabiano's opinion was consistent with other evidence in the treatment records, which generally showed Plaintiff to be in no acute distress; to be cooperative; and to have good attention and concentration, intact memory, and good judgment. Tr. 27, 421-47, 449-81, 618-62, 559-603.

However, the ALJ rejected the portion of Dr. Fabiano's opinion indicating that Plaintiff's impairments are not significant enough to interfere with her ability to function on a daily basis, finding that this portion of the opinion was inconsistent with other evidence of record showing that Plaintiff's anxiety impacted her social and work interactions . *Id.* Nevertheless, ALJ explained that, although the record indicates that Plaintiff has significant social anxiety, the weight of the

evidence supports the conclusion that this does not prevent her from performing sustained work activities consistent with the RFC assessed. Tr. 27.

The ALJ afforded significant weight to Dr. Dipeolu's April 2017 reviewing opinion, noting that although Dr. Dipeolu is not a treating or examining source, the opinion was supported by, and consistent with, examination findings from other treating and examining sources. Tr. 27. Dr. Dipeolu opined that Plaintiff had moderate limitations in her ability to interact with others and to adapt or manage herself, and no limitations in her ability to understand, remember, or apply information or to concentrate, persist, or maintain pace. Tr, 102-04. Dr. Dipeolu also opined that Plaintiff's ability to deal with coworkers and the public would be somewhat reduced but adequate to handle brief and superficial contact. Her ability to tolerate and respond appropriately to supervision would be reduced but adequate to handle ordinary levels of supervision in the customary work setting. Tr. 103.

The ALJ also noted that Dr. Dipeolu's opinion of moderate limitations in social interaction and her ability to adapt and manage herself was consistent with Dr. Fabiano's opinion. Tr. 27, 102-04, 517-21. However, the ALJ found that Plaintiff also had moderate limitations in her ability to concentrate, persist, or maintain pace, noting that such was supported by evidence of some reduced memory due to distractibility and Plaintiff's testimony that she forgets procedures when she is under high stress.. Tr. 27, 65-66. 520. In spite of this, the ALJ reasonably concluded that, based on repeated mental status examinations showing good concentration and attention and intact memory, Plaintiff retained the capacity for a range of simple routine work with minimal changes in workplace processes as noted in the RFC. Tr. 27.

Plaintiff appears to challenge the ALJ's assessment of the opinions of Dr. Fabiano and Dr. Dipeolu on the basis that one-time examinations and non-examining sources are categorically

entitled to less weight. *See* ECF No. 10-1 at 17-18. Plaintiff is mistaken. *See, e.g.*, *Camille v. Colvin*, 652 F. App' x 25, 28 (2d Cir. 2016) (holding that the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Frye ex rel. A.O. v. Astrue*, 485 F. App' x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). Furthermore, the ALJ did not give great weight to, or fully adopt, either of these opinions. The ALJ discussed each of the limitations they assessed and gave reasons for either adopting or rejecting those limitations. Tr. 26-27. The ALJ also went a step further and assessed more restrictive limitations, acknowledging medical evidence that justified additional limits. As noted above, the ALJ noted that Dr. Fabiano's opinion did not adequately account for the impact Plaintiff's anxiety has on her social and work interactions, and Dr. Dipeolu's opinion did not adequately account for Plaintiff's ability to concentrate, persist, or maintain pace. Tr. 26-27.

In addition to the objective medical evidence, ALJ also considered Plaintiff's testimony regarding her abilities and limitations, which contradicted Dr. Ashton's opinion. Tr. 28. As the ALJ noted, Dr. Ashton's opinion was not supported by Plaintiff's current work status or her testimony that she could hold a job if it was autonomous except for occasional meetings with supervisors. Tr. 28, 83. Plaintiff also testified that social situations where she had to interact with several people or generally be around large crowds caused her symptoms. Tr. 62-63, 77-78. Specifically, Plaintiff testified that she had been working full time at a youth center since November 2018. Tr. 63. She got along with her one co-worker who also worked the overnight shift with her. Tr. 75. However, she became overwhelmed and ultimately made a request to be switched to part time because, increasingly, there were two hours during the shift where she would need to

interact with all of the youth in the program; she was being scheduled for the day shift; and she was asked to attend meetings with 40 to 100 people. Tr. 77-78.

The ALJ also explained that she gave limited weight to Dr. Ashton's opinion because his statement that Plaintiff's gender change "affects ability to be treated fairly and appropriately by others and potentially makes her a distraction in the workplace" suggests that his opinion is based on factors unrelated to Plaintiff's functional capacity." Tr. 27. Based on the foregoing, the ALJ properly afforded limited weight to Dr. Ashton's opinion and reasonably concluded that the weight of the overall record supported a finding that Plaintiff retained the capacity to sustain full-time employment in a very low contact job, consistent with the limitations assessed in the RFC.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). Furthermore, as noted above, it is the ALJ's role to resolve evidentiary conflicts. *See* 20 C.F.R. § 416.920b(b) (an ALJ properly determines disability by resolving evidentiary inconsistencies in the record); *see also Veino*, 312 F. 3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's

determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the objective medical findings, the medical opinions, and Plaintiff's own testimony, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE